Filed 2/25/25  Marriage of Kim CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re the Marriage of JOSHUA and KIMBERLY KIM. | D083722 |
| JOSHUA KIM, | |
| Respondent, | (Super. Ct. No. DN179685) |
| v. | |
| KIMBERLY KIM, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Pennie K. McLaughlin, Judge.  Affirmed.

Kimberly Kim, in pro. per., for Appellant.

Joshua Kim, in pro. per., for Respondent.[1]

---

[1]    "As is customary in family law cases, we refer to the parties by their first names for purposes of clarity and not out of disrespect."  (*Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 828, fn. 2.)

# I. INTRODUCTION

The trial court modified a custody judgment to allow Kimberly unsupervised visitation with her son. After two months, the trial court found the new arrangement was not in the child's best interest and reimposed supervised visitation.[2] Kimberly appeals from that order, claiming it is not supported by the evidence and the trial court applied the wrong legal standard. We disagree and affirm.

# II. BACKGROUND

Kimberly and Joshua were married from 2007 to 2015. They have one child, R.K. (now 17.5 years old) In August 2020, Kimberly left 13-year-old R.K. alone in a hotel and drove to Oregon. She left behind what appeared to be a suicide note and contacted R.K. the next day. While in Oregon, Kimberly admitted herself to a psychiatric hospital for three days.

Based on this incident, the trial court granted Joshua sole custody of R.K. in an emergency order. Shortly afterwards, Kimberly and Joshua stipulated Kimberly would have professionally supervised visits with R.K. Family Court Services (FCS) recommended that this arrangement stay in place after mediating with the parties in 2022.

After a two-day evidentiary hearing in March 2022, the trial court agreed with FCS's report and ordered sole custody to Joshua. The trial court granted Kimberly visitation on holidays and 10 hours a week, as well as virtual contact two times per week, all professionally supervised. This ruling was subsequently memorialized in a judgment entered on June 15, 2022.

---

[2] The findings and order after hearing (FOAH) in the record was not filed or signed by the trial court. Kimberly provided a filed, executed copy of the order as requested, and we augment the record on our own motion to include that order. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

On May 26, 2022, Kimberly filed a request for order (RFO) seeking to modify custody and visitation. At a hearing on October 24, 2022, the trial court found changed circumstances because R.K., now more than two years older than when Kimberly left in 2020, was initiating contact with Kimberly, and R.K.'s opinions about the parenting plan needed to be heard. The court therefore appointed counsel for R.K., ordered a report from FCS, and continued the RFO.

In a report dated March 17, 2023, FCS recommended no changes to the existing parenting plan. FCS found that Kimberly blatantly disregarded the June 15, 2022 judgment, by having unsupervised virtual and in-person contact with R.K. During those visits Kimberly shared inappropriate information, manipulated R.K., and impacted his emotional wellbeing and stability. On August 17, 2023, the trial court found Kimberly guilty of two counts of contempt for unsupervised in-person visits with R.K.

At a hearing on September 20, 2023, Stephen Fritsch, R.K.'s counsel, reported that R.K. wanted his parents to have equal custody with no supervision. Fritsch also stated that Kimberly told R.K. that Joshua is a liar and wants to take R.K. away from Kimberly. R.K. believed Joshua lied to him, and Fritsch was concerned about what Kimberly might tell R.K. in unsupervised visits. The trial court observed that Kimberly lacked insight into what led to the existing custody order, her conduct demonstrated she was untrustworthy, and Kimberly involved R.K. in her conflict with Joshua. Nonetheless, the court stated Kimberly was capable of being a good parent and wanted R.K. to spend time with his mother, so it continued Kimberly's RFO and asked the parties to come up with a plan.

At the next hearing on October 2, 2023, the trial court explained that because R.K. was now 16 years old, it no longer had safety concerns about

3

Kimberly abandoning him. Instead, it was concerned that Kimberly's statements to R.K. about his father negatively impacted R.K. But the court found it was in R.K.'s best interest to have time with his mother alone, and to gradually move to a more meaningful sharing plan. The court therefore modified Kimberly's visitation rights, allowing two-hour unsupervised visits twice a week, and unsupervised 15-minute phone calls three times a week.

The trial court reviewed the new arrangement at a hearing on December 18, 2023. Fritsch reported that R.K. obtained a competitive college scholarship; the trial court acknowledged that accomplishment was largely attributable to Joshua because he had sole custody of R.K. over the past few years. Fritsch informed the court that R.K. wanted overnight visits with his mother, but Fritsch was concerned because Kimberly and R.K. discussed Fritsch and R.K.'s privileged communications. Fritsch also disclosed an incident where Kimberly and Joshua disagreed about how R.K. would spend Thanksgiving, causing R.K. stress.

At the same hearing, Joshua testified that since the court allowed unsupervised visitation, R.K. has been stressed. Citing the Thanksgiving incident and an example involving visiting a paintball park on a different day than she agreed with Joshua, Joshua stated that Kimberly unilaterally changes the schedule, causing R.K. stress and confusion. Joshua also stated his belief that it was not in R.K.'s best interest for Kimberly to have custody, and that visitation needs to be supervised.

Kimberly gave her side of the story regarding visitation, claiming she believed she could depart from the schedule imposed by the court and that R.K. got permission from Joshua to visit her earlier than the previously agreed upon time on Thanksgiving. Kimberly also asserted R.K. "wants 50/50" custody.

4

Ultimately, the trial court decided to revert to supervised visitation based on the negative consequences R.K. experienced due to Kimberly's inability to follow the court's directives.[3] Kimberly left the courtroom prior to the court finishing its orders. In its FOAH filed on January 22, 2024, the court found Joshua credible and that he "put the best interest of his son first." It also found that although Kimberly "enjoys a loving relationship with [R.K.], . . . this relationship is rife with inappropriate actions on [Kimberly's] part over the years," and Kimberly "is not capable of 'parallel parenting.' " The trial court concluded that supervised visitation was "in the best interest of [R.K.] to protect him from the risk of continued emotional harm." Kimberly appealed from that order.[4]

## III. DISCUSSION

### A.   *The Trial Court Applied the Correct Legal Standard*

Kimberly argues the trial court applied the wrong legal standard. She claims the trial court failed to consider the changed circumstances and R.K.'s best interest.

A noncustodial parent seeking to modify an existing custody order "has a substantial burden to show that ' "some significant change in circumstances indicates that a different arrangement would be in the child's best interest." ' " (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1088.) We

---

[3]     The trial court also denied Kimberly's request to remove Fritsch as minor's counsel. It found no evidence of Kimberly's claims of bias or unethical conduct, and that Fritsch upheld his role as a neutral party.

[4]     As explained in our previous order dated May 17, 2024, we treat Kimberly's appeal as being from the FOAH even though her notice of appeal was filed before that order was entered. (Cal. Rules of Court, rule 8.104(d)(2).)

independently review whether the trial court applied the correct legal standard. (*In re Marriage of E.U. & J.E.* (2012) 212 Cal.App.4th 1377, 1389.)

The trial court modified the existing custody order on October 2, 2023, allowing Kimberly unsupervised visits because it was "in the best interests of [R.K.] to have some limited time with [Kimberly] alone." The changed circumstances justifying that modification were R.K.'s age and, given R.K. was now older, the "possibility that [Kimberly] would pose less of a threat to his emotional well-being and security."

At the December 18, 2023 hearing, the trial court stated its desire for R.K. to have a relationship with his mother to the extent possible so long as it did not "compromise his mental health." The trial court elicited an update from the parties and Fritsch on R.K.'s progress since the modification of the parenting plan. The trial court acknowledged R.K.'s progress while in Joshua's sole custody, and specifically asked about R.K.'s best interest regarding the custody arrangement. In the FOAH, the court determined Joshua "put the best interest of his son first," and noted "it is not in the best interest of [R.K.] to allow unsupervised visits to continue," and supervised visitation was "in the best interest of [R.K.] to protect him from the risk of continued emotional harm."

This record demonstrates the trial court assessed R.K.'s best interest by weighing his increasing maturity and need for time with Kimberly against the damaging effects of Kimberly's acts while unsupervised. The trial court therefore applied the correct legal standard.

B.    *Substantial Evidence Supports the Custody Order*

Kimberly argues the order reverting to the previous custody arrangement was not supported by substantial evidence. She claims the court failed to consider relevant evidence and overlooked lies from Fritsch,

6

Joshua, and Joshua's counsel. Kimberly further contends the trial court was biased against her, blocked her evidence and argument, committed "judicial gaslighting," and baselessly speculated. We disagree.[5]

First, as for the matters the trial court purportedly failed to consider, Kimberly relies on R.K.'s age, the evidence she submitted at the various hearings, visitation supervisor reports, and the March 17, 2023 FCS report. However, the record shows the trial court did in fact consider this evidence. For example, on October 24, 2022, the trial court modified the June 15, 2022 custody judgement based on R.K.'s age and Kimberly's declarations stating R.K.'s desire to spend time with his mother. Additionally, on September 20, 2023, the trial court referenced positive reports from the visitation supervisor, Kimberly's photographs and experiences with R.K., and a report from Kimberly's therapist asserting Kimberly accepted responsibility for the August 2020 incident during which she abandoned R.K. and drove to Oregon. Further, the trial court explained on December 18, 2023, that despite FCS's contrary position, the trial court relied on Kimberly's "letters and declarations, the letters from [Kimberly's] therapist," and R.K.'s age in granting unsupervised visits.

---

[5]    Kimberly also asserts the trial court allowed hearsay from Joshua, but she fails to identify to what evidence she is referring. Kimberly merely references various statements from the court she presumes were based on hearsay, and the court's rulings on evidence submitted by Kimberly. Without more, we cannot discern to what she refers. We therefore decline to consider this argument. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 ["Rather than scour the record unguided, we may decide that the appellant has waived a point urged on appeal when it is not supported by accurate citations to the record."].)

Second, " '[w]e do not judge credibility on appeal.' " (*Bruno v. Hopkins* (2022) 79 Cal.App.5th 801, 824.) The trial court found Joshua and Fritsch credible, and we defer to that determination. As for Joshua's attorney, he did not testify. Kimberly only cites to counsel's arguments, some of which the court rejected by allowing Kimberly's RFO to proceed and temporarily allowing unsupervised visitation.

Third, Kimberly's assertions that the trial court acted improperly are unsupported. Throughout the hearings in which the court considered modifying the June 15, 2022 custody judgement, Kimberly frequently interrupted the court and others and had to be reminded of the scope of hearings. There is no indication the court blocked any of Kimberly's evidence. Instead, it repeatedly referenced Kimberly's filings.[6] The court even allowed Kimberly to summarize a declaration she attempted to file but was rejected by the clerk's office. The court also assisted Kimberly with formulating evidentiary objections and allowed Kimberly unsupervised visits despite a strenuous objection from Joshua and contrary recommendation from FCS.

Finally, the trial court's ruling is supported by substantial evidence. Under that "highly deferential" standard of review, "we accept all evidence supporting the trial court's order," "completely disregard contrary evidence," "draw all reasonable inferences to affirm the trial court" and "[w]e do not reweigh the evidence." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581.) Despite Kimberly's history of inappropriate behavior, the trial

---

[6] The trial court also mentioned filings from Joshua, which are noticeably absent from the record. While an incomplete record often requires affirming the trial court (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609), as we will explain, here we find adequate support for the trial court's ruling in the portion of the record we received.

court gave her an opportunity to have unsupervised time with her son. However, Joshua observed R.K. experience stress and confusion under the new arrangement. Although Kimberly had a different perspective, the trial court accepted Joshua's assessment of R.K.'s wellbeing over Kimberly's. That determination was consistent with the neutral reports from FCS and Fritsch that Kimberly's inappropriate actions while unsupervised negatively impacted R.K. The decision to return to supervised visitation was therefore adequately supported.

C.     *Joshua's Motion for Sanctions is Denied*

Joshua requests that we sanction Kimberly $20,000, arguing Kimberly acted egregiously in the trial court and on appeal.!(RB 16-19)! Joshua failed to file or serve a declaration supporting his request as required. (Cal. Rules of Court, rule 8.276(b)(1).) We deny the request on that ground without reaching its merits.

## IV. DISPOSITION

The order is affirmed.  Joshua is awarded costs on appeal.


                                                                RUBIN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DO, J.